UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:23-cr-34 |
| v. ) | |
| ) | |
| HUNTER ROBERT COY ) | Judges Collier / Lee |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the Defendant, Hunter Robert Coy ("the Defendant"), and the Defendant's attorney, Gene Shiles, have agreed upon the following:

1. The Defendant will plead guilty to Count Two of the Two Count Indictment:

**Count Two:** Possession with the intent to distribute five (5) grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The punishment for this offense is as follows.

Imprisonment for a mandatory minimum term of 5 years imprisonment and a maximum sentence of 40 years imprisonment; a fine of up to $5,000,000; supervised release for a period of at least 4 years and a maximum of life; any lawful restitution imposed by the Court; the forfeiture of any property allowed by law; and a $100 special assessment.

2. Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, the United States agrees, in consideration of the Defendant's guilty plea, to move the Court at the time of sentencing to dismiss Count One of the Indictment, charging the Defendant with the Possession of a Firearm and Ammunition by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1).

3. The Defendant has read the Indictment, discussed the charges and possible defenses with Defense Counsel, and understands the crimes charged. The Defendant is pleading guilty because the Defendant is in fact guilty.

In order to be guilty, the Defendant agrees that each of the following elements of the crime(s) must be proved beyond a reasonable doubt:

**Count Two:**

a) The Defendant knowingly and intentionally possessed a controlled substance;
b) The controlled substance consisted of 5 grams or more of actual methamphetamine; and
c) The Defendant intended to distribute controlled substance.

4. In support of the Defendant's guilty plea, the Defendant agrees and stipulates to the following facts, which the Defendant admits satisfy the offense elements. These are the facts submitted for purposes of the Defendant's guilty plea. They do not necessarily constitute all the facts in the case. Other facts may be relevant to sentencing. Both the Defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

(a) On October 11, 2022, officers of the 10th Judicial District's Drug Task Force were conducting surveillance on a residence in Bradley County, Tennessee. Agent Terry Wyatt watched the Defendant carry a black backpack to a GMC Yukon, place the backpack in the backseat behind the driver's seat, and get in the driver's seat of the vehicle. There were several other individuals seen in the vehicle as well.

(b) The Yukon was followed and seen making a couple of stops at local businesses. Approximately 30 minutes after it left the residence, the Yukon pulled into a gas station, where it was stopped for a window tint violation by a Cleveland Police Department officer. The Defendant was still the driver of the vehicle, and there were 3 other occupants. The CPD officer inspected the

windows and determined they were, in fact, darker than the legal limit.

(c) A trained K9 was walked around the vehicle and alerted. The vehicle was then searched pursuant to the alert. A black North Face backpack was located behind the driver side front seat. Inside the backpack, the following items were found:

- A GSG Firefly .22 caliber pistol with a loaded magazine;
- A camouflage pouch containing a zip lock bag with suspected methamphetamine in it and another plastic bag with suspected methamphetamine in it. The camouflage pouch also contained numerous plastic bags and a set of WeighMax Digital Scales;
- A blue folder with "Coy's" handwritten on the outside of the folder;
- An orange notebook with "Hunter's Notes" handwritten on the outside of the notebook. The notebook contained names and monetary amounts written to the side of the names.

(d) The Defendant was read his *Miranda* rights and agreed to speak with ATF Special Agent Thomas Bagwell and DTF Assistant Director Matt Bales. Initially, the Defendant denied he possessed the firearm or the methamphetamine. However, he eventually admitted to possessing both.

(e) If this case had proceeded to trial, an expert would have testified that the GSG Firefly .22 caliber pistol referenced above meets the definition of a "firearm" as set forth in the United States Code and was manufactured outside the State of Tennessee. Therefore, it did travel in interstate commerce.

(f) The suspected methamphetamine found in the backpack was sent to the DEA's Nashville Sub-Regional Laboratory for analysis. It was determined to be methamphetamine, and the weight was 48.30 grams. It was 99 percent pure, resulting in 47.81 grams of actual methamphetamine. Further, if this matter were to proceed to trial, an expert witness from the Drug Enforcement Administration would testify that the amount of methamphetamine, the presence of the firearm, and the circumstances surrounding the Defendant's arrest are all consistent with the possession of the methamphetamine for the purpose of distribution and not for mere personal use.

(g) The Defendant admits that on October 11, 2022, as charged in Count Two of the Indictment, he possessed more than 5 grams of actual methamphetamine, and that he intended to distribute this methamphetamine to some other person or persons.

(h) The above-referenced acts and events occurred in the Eastern District of Tennessee.

5. The Defendant understands that by pleading guilty the Defendant is giving up several rights, including:

(a) the right to plead not guilty;

(b) the right to a speedy and public trial by jury;

(c) the right to assistance of counsel at trial;

(d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the Defendant guilty beyond a reasonable doubt;

(e) the right to confront and cross-examine witnesses against the Defendant;

(f) the right to testify on the Defendant's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

(g) the right not to testify and to have that choice not used against the Defendant.

6. The parties agree that the appropriate disposition of this case would be the following:

(a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

(b) The Court will impose special assessment fees as required by law; and

(c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the Defendant as to what the sentence will be in this case. Any estimates or predictions made to the Defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on

the Court and may not be used as a basis to rescind this plea agreement or withdraw the Defendant's guilty plea(s). The Defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The Defendant acknowledges that the sentencing determination will be based upon the entire scope of the Defendant's criminal conduct, the Defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the Defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the Defendant's offense level is 16 or greater, and the Defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the Defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the Defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the Defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The Defendant agrees to pay the special assessment in this case prior to sentencing.

9. The Defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The Defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the Defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the Defendant

agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The Defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The Defendant and counsel also agree that the Defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the Defendant's counsel and outside the presence of the Defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the Defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by the United States, the Defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The Defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

(b) The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the Defendant in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

(c) If so requested by the United States, the Defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the Defendant.

10. Unless otherwise limited by an agreed preliminary order of forfeiture, the Defendant

agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the Defendant or the Defendant's nominees that were involved in the commission of an offense in violation 21 U.S.C. § 841.

The Defendant agrees to forfeit the Defendant's interest in the following:

- GSG Firefly .22 caliber pistol; and
- Ammunition

The Defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The Defendant further agrees to make a full and complete disclosure of all assets over which the Defendant exercises control and those which are held or controlled by a nominee. The Defendant agrees to forfeit all interests in the property as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The Defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The Defendant agrees to take all such steps to locate such property and to pass title to the United States before the Defendant's sentencing.

11. The Defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the Defendant's acceptance of responsibility for the offense(s) committed, the Defendant voluntarily, knowingly, and intentionally agrees he will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the

Privacy Act of 1974, 5 U.S.C. Section 552a.

12. This agreement becomes effective once it is signed by the parties and is not contingent on the Defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the Defendant will have the right to withdraw from this agreement. If the Defendant violates the terms of this agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the Defendant for any and all federal crimes that the Defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The Defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The Defendant also understands that a violation of this plea agreement by the Defendant does not entitle the Defendant to withdraw the Defendant's guilty plea(s) in this case.

13. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. If additional terms are included in the Supplement, they are hereby fully incorporated herein.

14. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the Defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the Defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises,

representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON, III
UNITED STATES ATTORNEY

9/11/2023
Date

By: *[signature]*
Franklin P. Clark
Assistant United States Attorney

9-5-2023
Date

*[signature]*
Hunter Robert Coy
Defendant

9-10-2023
Date

*[signature]*
Gene Shiles
Attorney for the Defendant